IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLOW FARMS, LLC, a                        2:15-CV-01862-BR
Washington limited liability
company,                                    OPINION AND ORDER

            Plaintiff,

v.

AWCC WCW HOLDINGS, LLC, a
Delaware limited liability
company; AG LAND PROPERTY
MANAGEMENT I, LLC, a Delaware
limited liability company;
and HA WILLOW CREEK CAPITAL
LLC,

            Defendants.


JOSEPH W. CARLISLE
Zupancic Rathbone Law Group, P.C.
4949 Meadows Road
Suite 600
Lake Oswego, OR 97035
(503) 968-8200

            Attorneys for Plaintiff


1 - OPINION AND ORDER

JOHN C. ROTHERMICH
Garvey Schubert Barer
121 S.W. Morrison Street
11th Floor
Portland, OR 97204
(503) 228-3939

     Attorneys for Defendants


**BROWN, Judge.**

     This matter comes before the Court on Defendants' Motion

(#14) to Dismiss.  For the reasons that follow, the Court **GRANTS**

Defendants' Motion and **DISMISSES** this matter **without prejudice.**


<u>BACKGROUND</u>

     The following facts are taken from Plaintiff Willow Farms,

LLC's First Amended Complaint, and the parties' materials related

to Defendants' Motion to Dismiss.

     Plaintiff is the fee-simple owner of real property located

in Morrow County, Oregon.  The property contains farm land "on

which wind-power facilities have been placed."

     On December 30, 2003, Plaintiff and two other entities,

Diamond Properties Investment Company and Cricket Flat

Development Company (collectively referred to as Cullen by the

parties), formed Willow Creek Windpower, LLC (WCW) for the

purpose of "holding the title and interest as the lessor of a

lease for [the] wind power facilities and the wind rights"

located on the land owned by Plaintiff.  Plaintiff held a 51%

2 - OPINION AND ORDER

interest in WCW, and Cullen held a 49% interest.

At some point the wind facility and wind rights were leased by WCW to nonparty Windcreek Energy, LLC (WCE).

On October 6, 2011, Defendant AWCC WCW Holdings, LLC, sought to acquire the "income stream" from the wind-power leases held by WCW.  AWCC's acquisition involved several inter-related transactions:  (1) AWCC purchased Cullen's 49% interest in WCW outright for $3,200,000; (2) Plaintiff and AWCC entered into an Amended and Restated Operating Agreement (AROA) for WCW, which designates AWCC and Plaintiff as WCW Members; and (3) rather than purchasing Plaintiff's 51% interest in WCW outright, AWCC and Plaintiff agreed to a loan that would give AWCC the right to receive the annual lease payments from WCE for wind facilities and wind rights through 2038.  To effectuate the loan agreement on October 6, 2011, WCW entered into a loan agreement and promissory note in which AWCC's affiliate, Defendant Ag Land Property Management I, LLC,[1] loaned WCW $2,664,747.60 at an interest rate of 11.266% per annum.  WCW, in turn, paid the $2,664,747.60 to Plaintiff.  Pursuant to the terms of the promissory note, WCE makes its wind-right lease payments directly to Ag Land.

The loan agreement and promissory note also provide in

---

[1] AWCC and Ag Land are affiliate companies owned by non-party Hanna Armstrong.

pertinent part:

> This Loan Agreement and Promissory Note (this
> "Agreement") is made and entered into as of this
> 6th day of October, 2011 (the "Effective Date"),
> by and between Ag Land . . . ("Lender"), and
> *[WCW], an Oregon limited liability company
> ("Borrower")*. . . .  Willow Farms, as it is
> defined below and referenced herein, consents to
> the terms and conditions of this Agreement.

\* \* \*

> *Borrower* may prepay the Loan Amount in full, but
> not in part, and *only subject to the following
> requirements*:  (a) Willow Farms sells the Property
> and clears title in closing escrow to such a
> transaction; (b) Willow Farms causes Community
> Bank . . . to deliver to an escrow closing agent
> . . . a request for full reconveyance, . . . a
> deed of full reconveyance by the trustee of the
> deed of trust . . . , together with releases in
> full of all assignments of rents and all other
> security interests related to the underlying debt
> . . .; and, (c) Willow Farms provides written
> instructions to such escrow to repay the Community
> Bank Loan in full and obtain and record deeds of
> full reconveyance and releases of the Community
> Bank Loan.

\* \* \*

> This Agreement, and the instruments and agreements
> referred to herein, *constitute the entire
> agreement* between Borrower and Lender with respect
> to the subject matter hereof.

\* \* \*

> This Agreement may be amended, modified or
> terminated only by a writing signed by the party
> against whom it is to be enforced.  *No act or
> course of dealing shall be deemed to constitute an
> amendment*, modification or termination hereof.
> The written consent of Willow Farms shall not be
> required to bind the Parties to an amendment or
> modification of this Agreement.

4 – OPINION AND ORDER

> Nothing express or implied in this Agreement is
> intended to confer any rights or benefits on
> any Person other than Borrower and Lender, and
> their permitted successors and assigns.

Decl. of John C. Rothermich, Ex. B at 1, 5, 20-21 (emphasis added).

The AROA entered into by Plaintiff and AWCC on October 6, 2011, provides in pertinent part:

> Willow Farms . . . and AWCC . . . are the holders
> of the membership interests for [WCW] . . . .
> Willow Farms and AWCC are collectively referred to
> herein below as the "Members", and each
> individually as a "Member."

> * * *

> 1.4  Purpose.  [WCW] was formed and continues to
> exist for the purpose of holding all right, title
> and interest as Lessor under . . . certain Option
> and Lease Agreements for wind power facilities.

> * * *

> 3.7  Voting.  On each matter requiring action by
> the Members, each Member shall be entitled to one
> vote.  All decisions of the Company shall be
> approved upon the unanimous vote of the Members.

> * * *

> 4.1  General

> (a)  Right to Manage.  Each Member shall have
> an equal right to participate in the day-to-day
> management of [WCW].  The Members shall delegate
> primary responsibility for particular business
> matters among themselves from time to time as they
> determine appropriate.  The Member holding
> delegated responsibility as to any matter shall be
> the "Member Agent" of [WCW] for such matters and
> shall solely exercise the authorities given to
> that member for such purposes.

* * *

    (b)  Member Agent of [WCW].  The Member Agent shall be the exclusive agent of [WCW] for purposes of its business, and the act of the Member Agent . . . binds [WCW], provided all Members are aware and in agreement prior to such action by the Member Agent, or, unless the Member Agent has in fact no authority to act for [WCW] in the particular matter.

    (c)  on behalf of [WCW], . . . sell or contract to sell any property for or of [WCW] other than the type of property bought and sold in the regular course of its business.

* * *

4.2 <u>Restrictions</u>.  Without the unanimous consent of all Members, no Member shall, in the capacity as a Member, or Member Agent:

    (a)  execute any contract or incur any obligation which may subject [WCW] to a current or long term liability in excess of $5,000.00 annually;

* * *

    d)  except as otherwise provided in this Agreement . . . do any act detrimental to the best interests of [WCW].

4.5  <u>Designated Member Agent</u>.  The designated Member Agent shall be AWCC.

Rothermich Decl., Ex. A at 1, 5-7.

    In July 2015 Plaintiff notified AWCC[2] "of [Plaintiff's]

---

    [2] Plaintiff alleges in its First Amended Complaint that it notified AWCC that it intended to prepay the loan made to WCW by Ag Land.  The July 2015 notification, however, is not in the record, and the August 12, 2015, letter from AWCC states Plaintiff "submitted a request to Ag Land . . . seeking Lender's approval that the Borrower may prepay [the] loan."  Decl. of Marl Zoller, Ex. 6 at 1.  Accordingly, it is not clear whether

intent to prepay" the loan that Ag Land had provided to WCW.

First Am. Compl. at ¶ 31.

On August 12, 2015, AWCC sent a letter to Plaintiff stating
in pertinent part:

> You have submitted a request to Ag Land . . .
> ("Lender"), presumably on behalf of Willow Farms
> LLC . . . as a member of [WCW] (the "Borrower"),
> seeking Lender's approval that the Borrower may
> prepay [the loan Ag Land made to WCW] (the "WCW
> Loan").
>
> * * *
>
> On behalf of . . . AWCC . . ., this letter is to
> notify Borrower and Willow Farms that AWCC . . .
> does not approve of the Borrower's submission of a
> request to Lender to prepay the WCW Loan under the
> Loan Agreement, and no such request is authorized.

Decl. of Marl Zoller, Ex. 6 at 1.  AWCC advised Plaintiff to

contact Patrick Giardina with Hanna Armstrong to discuss anything

"other than the prepayment of the WCW Loan that Lender or AWCC

. . . can do to assist" Plaintiff in an effort to sell or to

refinance the real property owned by Plaintiff.  *Id.*

On August 14, 2015, Plaintiff contacted Giardina via

telephone and email regarding prepayment of Ag Land's loan to

WCW.

On August 17, 2015, Giardina sent a letter to Plaintiff in

which he advised Plaintiff that AWCC as 49% owner and Managing

Agent of WCW did not approve prepayment of the WCW Loan.

_____

Plaintiff submitted a request to prepay the loan to AWCC or to Ag
Land.

Giardina also advised Plaintiff that

> Willow Farms LLC ha[s] no right to prepay the WCW
> Loan; only the Borrower [WCW] can prepay the WCW
> Loan and cannot do so unless such an action is
> authorized by the Borrower's members pursuant to
> the [AROA]. . . . [S]uch action has not been
> approved by [WCW member AWCC].

Decl. of Marl Zoller, Ex. 7 at 1.

On August 26, 2015, Plaintiff sent a letter to AWCC and
Giardina in which it asserted (1) due to AWCC's refusal to permit
Plaintiff to prepay the WCW Loan, AWCC was in breach of the terms
of the WCW Operating Agreement and (2) Plaintiff "intend[ed] to
proceed with the prepayment of the [WCW] Loan, and is prepared to
meet the conditions of prepayment under the Promissory Note."
Plaintiff stated

> AWCC's continued interference with prepayment of
> the [WCW] Loan will also severely limit
> [Plaintiff']s *ability to sell interests* in
> [Plaintiff].  In fact, [Plaintiff] has already
> received a substantial offer for a *minority
> interest* in [Plaintiff], but it cannot close on
> that offer until the Loan is paid in full.

Rothermich Decl., Ex. C at 3 (emphasis added).

On September 2, 2015, AWCC sent a letter to Plaintiff in
which it disagreed with Plaintiff's assertion that AWCC's refusal
to permit prepayment of the WCW Loan was a breach of the AROA.
AWCC asserted, among other things, that the decision whether to
permit prepayment of the WCW Loan was solely within the scope of
AWCC's authority as the Member Agent of WCW, § 4.2 of the AROA
requires the "unanimous consent of all Members" of WCW to

"execute any contract or incur any obligation which may subject [WCW] to a current or long term liability in excess of $5,000 annually," and the prepayment penalty on the WCW Loan would be "well in excess of $5,000." AWCC also noted "[u]nanimous consent [of all Members of WCW] is also required under Section 4.2(d), which prohibits Members from entering into any agreement 'as a result of which any person shall become interested with the member of the company.'" Carlisle Decl., Ex. 2 at 1-2.

On September 10, 2015, Plaintiff sent a letter to AWCC in which it again "invok[ed] [WCW's] right to prepay the . . . loan" and to request AWCC to "reconsider its position with respect to prepayment." Carlisle Decl., Ex. 4 at 1. Plaintiff asserted, among other things, that it intended to make "all payments associated with prepayment of the Loan," and, therefore, WCW would not "be subjected to liability in excess of $5,000." *Id.* at 4. Plaintiff also asserted unanimous consent of WCW's members is not required under § 4.2(d) of the AROA for Plaintiff to prepay the Loan because that section does not grant AWCC the right to control Plaintiff. According to Plaintiff, therefore, it "does not need AWCC's consent to conduct its business and operations and is entitled to use its 51% share of lease payments in any manner it may choose following prepayment of the Loan." *Id.* at 2. Finally, Plaintiff stated it "intends to sell the [real] Property and prepay the Loan." *Id.* at 5.

On September 17, 2015, AWCC sent Plaintiff a letter in which it again disagreed with Plaintiff's position as to prepayment of the WCW Loan.  AWCC noted, among other things, that § 4.1(b) of the AROA states the Member Agent "shall be the exclusive agent of the company for the purposes of its business," which includes "the ability to control all bank accounts" of WCW.  AWCC also asserted Plaintiff "missed the point" of AWCC's argument as to the applicability of § 4.2(a) of the AROA because even though Plaintiff asserts it will pay the prepayment penalty of the WCW Loan, the prepayment penalty is in excess of $5,000, and, therefore, the prepayment by WCW (even if the funds were actually paid by Plaintiff) "triggers [the] requirement of 'unanimous consent of all Members.'"  Carlisle Decl., Ex. 5 at 2.

The record does not reflect any further correspondence between Plaintiff and AWCC that sets out their positions as to the right or ability of Plaintiff to prepay the WCW Loan.

On September 18, 2015, Ag Land assigned the WCW Promissory Note to Defendant HA Willow Creek Capital LLC (WCC) as part of a corporate restructuring.  On October 26, 2015, WCC advised Plaintiff and WCW that Ag Land had assigned the WCW Promissory Note to WCC.

On October 2, 2015, Plaintiff filed a Declaratory Judgment action in this Court against AWCC and Ag Land in which it sought declarations and injunctive relief related to Plaintiff's right

to prepay the WCW Loan.  The matter was assigned to Magistrate
Judge Patricia Sullivan.

On October 27, 2015, Plaintiff asked WCC if it would allow
Plaintiff to prepay the WCW Promissory Note.  WCC advised
Plaintiff that it did not authorize prepayment of the WCW
Promissory Note for the reasons stated by AWCC in its
correspondence with Plaintiff.

On November 11, 2015, Plaintiff filed a First Amended
Complaint to add WCC as a Defendant.  Plaintiff seeks
declarations that (1) it has the right to prepay the WCW Loan on
"a sale of the Property," (2) AWCC does not have the exclusive
right to prepay the WCW Loan, (3) AWCC's consent is not required
for Plaintiff to prepay the WCW Loan, (4) AWCC is in breach of
its fiduciary duty to Plaintiff and WCW, (5) Ag Land and/or WCC
cannot refuse to provide the total prepayment amount for the WCW
Loan, and (6) Ag Land and/or WCC cannot refuse to accept
prepayment of the Loan from Plaintiff.  Plaintiff also seeks a
permanent injunction enjoining (1) Ag Land and/or WCC from
refusing to accept Plaintiff's prepayment of the WCW Loan;
(2) AWCC from "putting the interests of Ag Land, [WCC,] and
Hannon Armstrong before the interests of [WCW] and [Plaintiff],
in breach of its fiduciary duties"; and (3) AWCC from interfering
with Plaintiff's efforts to prepay the WCW Loan.

On November 25, 2015, Defendants filed a Motion to Dismiss.

11 - OPINION AND ORDER

The matter was transferred to this Court on February 8, 2016. The Court took the matter under advisement on February 22, 2016.

## STANDARDS

**I.   Dismissal for Lack of Jurisdiction Pursuant to Rule 12(b)(1)**

Plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *United States ex rel. Mateski v. Raytheon* Co., 816 F.3d 565, 569 (9th Cir. 2016)(quotation omitted).  See *also Ass'n of Am. Med. Coll. v. United States*, 217 F.3d 770 (9th Cir. 2000).

When deciding a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the court may consider affidavits and other evidence supporting or attacking the complaint's jurisdictional allegations.  *Rivas v. Napolitano*, 714 F.3d 1108, 1114 n.1 (9th Cir. 2013).  The court may permit discovery to determine whether it has jurisdiction.  *Laub v. United States Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003).  When a defendant's motion to dismiss for lack of jurisdiction "is based on written materials rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss."  *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011)(citation omitted).

## II.   Dismissal for Failure to State a Claim Pursuant to Rule 12(b)(6)

> To survive a motion to dismiss, a complaint must
> contain sufficient factual matter, accepted as
> true, to "state a claim to relief that is
> plausible on its face."   [*Bell Atlantic v.
> Twombly*, 550 U.S. 554,] 570, 127 S. Ct. 1955.   A
> claim has facial plausibility when the plaintiff
> pleads factual content that allows the court to
> draw the reasonable inference that the defendant
> is liable for the misconduct alleged.   *Id.* at 556.
> . . .   The plausibility standard is not akin to a
> "probability requirement," but it asks for more
> than a sheer possibility that a defendant has
> acted unlawfully.   *Ibid.*   Where a complaint pleads
> facts that are "merely consistent with" a
> defendant's liability, it "stops short of the line
> between possibility and plausibility of
> 'entitlement to relief.'"   *Id.* at 557, 127 S. Ct.
> 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).   *See also Bell Atlantic*, 550 U.S. at 555-56.   The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff.   *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013).

The pleading standard under Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).   *See also* Fed. R. Civ. P. 8(a)(2).   "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   *Id.* (citing *Twombly*, 550 U.S. at 555).   A complaint also does not suffice if it tenders "naked assertion[s]" devoid of "further factual

enhancement." *Id.* at 557.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9ᵗʰ Cir. 2012)(citation omitted).  A court, however, "may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9ᵗʰ Cir. 2007)(citation omitted).

## DISCUSSION

Defendants move to dismiss this matter on the grounds that the Court lacks subject-matter jurisdiction because the dispute is not ripe for adjudication or, in the alternative, that the "plain, unambiguous terms of the relevant contracts show the parties' intent that prepayment of the loan would require the consent of [AWCC]."

## I.  Plaintiff's claims are not ripe for adjudication.

As noted, Defendants assert this Court lacks subject-matter jurisdiction because Plaintiff's claims are not ripe for adjudication.  Specifically, Defendants assert this matter is not ripe because it involves an "uncertain or contingent future event that may not occur" because Plaintiff cannot establish that it

14 – OPINION AND ORDER

has fulfilled a condition precedent to the prepayment of the loan:  the sale of all of Plaintiff's real property.  Defendants also assert even if Plaintiff satisfied the condition precedent by selling its real property, Plaintiff does not have an unfettered right to prepay the WCW Loan because Plaintiff is not the "borrower" under the terms of the loan.  According to Defendants, therefore, this Court lacks jurisdiction because there is not an actual case or controversy before the Court.

Plaintiff, in turn, asserts there is an actual case or controversy before the Court.  Specifically, Plaintiff disputes Defendants' assertion that the provisions of the WCW Loan and the AROA permit only WCW to prepay the WCW Loan and/or that AWCC must give permission for Plaintiff to prepay the WCW Loan.  With respect to Defendants' assertion that Plaintiff must sell all of its real estate before WCW may prepay the WCW Loan, Plaintiff asserts it has complied with that provision because it has provided Defendants with notice of its intent to sell the real property and "to comply with the other prepayment conditions."  Plaintiff asserts it should not have to sell its real property first and then test whether Defendants will allow Plaintiff to prepay the WCW Loan in order to obtain declaratory relief from the Court.

**A.    Standards**

The Declaratory Judgment Act provides:  "In a case of

actual controversy within its jurisdiction . . . any court of the
United States . . . may declare the rights and other legal
relations of any interested party seeking such declaration,
whether or not further relief is or could be sought."  28 U.S.C.
§ 2201(a).  The phrase "a case of actual controversy" refers to
the types of "cases" and "controversies" justiciable under
Article III of the United States Constitution.  *MedImmune, Inc.*
*v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  "Absent a true
case or controversy, a complaint solely for declaratory relief
under 28 U.S.C. § 2201 will fail for lack of jurisdiction under
Rule 12(b)(1)."  *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151,
1157 (9th Cir. 2007).

In *MedImmune* the Supreme Court summarized the
difference "between those declaratory-judgment actions that
satisfy the case-or-controversy requirement and those that do
not" as follows:  "Basically, the question in each case is
whether the facts alleged, under all the circumstances, show that
there is a substantial controversy, between parties having
adverse legal interests, of sufficient immediacy and reality to
warrant the issuance of a declaratory judgment."  *Id.* at 127.
The Court also described a dispute that satisfies the case-or-
controversy requirement as one that is "definite and concrete,
touching the legal relations of parties having adverse legal
interests," to the degree that the dispute is "'real and

16 - OPINION AND ORDER

substantial'" and "admi[ts] of specific relief through a decree
of a conclusive character, as distinguished from an opinion
advising what the law would be upon a hypothetical state of
facts." *Id.* (quotation omitted).

"The . . . doctrine of ripeness is a means by which
federal courts may dispose of matters that are premature for
review because the plaintiff's purported injury is too
speculative and may never occur." *Chadler v. State Farm Mut.
Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). "'[T]he
question of ripeness turns on the fitness of the issues for
judicial decision and the hardship to the parties of withholding
court consideration.'" *Id.* (quoting *Pac. Gas & Elec. Co. v.
State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201
(1983)). "The 'central concern [of the ripeness inquiry] is
whether the case involves uncertain or contingent future events
that may not occur as anticipated, or indeed may not occur at
all.'" *Id.* at 1122-23 (quoting *Richardson v. City and County of
Honolulu*, 124 F.3d 1150, 1160 (9th Cir. 1997)).

**B.    Sale of Plaintiff's real property is a condition
precedent to prepayment of the WCW Loan.**

As noted, the WCW Loan provides in relevant part:

> *Borrower* may prepay the Loan Amount in full, but
> not in part, and *only subject to the following
> requirements*:  (a) Willow Farms sells the Property
> and clears title in closing escrow to such a
> transaction; (b) Willow Farms causes Community
> Bank . . . to deliver to an escrow closing agent

17 – OPINION AND ORDER

> . . . a request for full reconveyance, . . . a
> deed of full reconveyance by the trustee of the
> deed of trust . . . , together with releases in
> full of all assignments of rents and all other
> security interests related to the underlying debt
> . . .; and, (c) Willow Farms provides written
> instructions to such escrow to repay the Community
> Bank Loan in full and obtain and record deeds of
> full reconveyance and releases of the Community
> Bank Loan.

Rothermich Decl., Ex. B at 5 (emphasis added).   The WCW Loan

defines "the Property" as the entirety of the real property owned

by Plaintiff.   The prepayment provision of the WCW Loan is not

ambiguous or unclear.   Each of its terms are defined in the WCW

Loan.   The phrase permitting the Borrower to prepay the "Loan

Amount . . . only subject to the following requirements"

unambiguously permits the Borrower to prepay the WCW Loan only

after Plaintiff sells its real property and clears the title to

the real property in escrow.   Plaintiff has not alleged and the

record does not reflect either of those things has occurred.   In

fact, Plaintiff alleges in its First Amended Complaint that it

"intends to effect a sale of the Property whereby title will be

cleared, but it has been unable to properly market the Property."

It is unclear from that allegation whether Plaintiff has received

an actual offer on the real property or whether Plaintiff merely

intends to sell the real property but has not yet received an

offer because it "has been unable to market" the real property.

Similarly, in its Response to Defendants' Motion to Dismiss

Plaintiff alleges it "has consistently stated its intent to sell

18 – OPINION AND ORDER

the Property," but Defendants have refused to allow it to repay the WCW Loan.  In Plaintiff's August 26, 2015, letter to AWCC Plaintiff stated it "has . . . received a substantial offer for *a minority interest* in [Plaintiff] but it cannot close on that offer until the [WCW] Loan is paid in full."  Carlisle Decl., Ex. 1 at 3 (emphasis added).  At best, the August 26, 2015, letter indicates Plaintiff has an offer for a "minority interest" in Plaintiff's real property.[3]  There is not any indication in Plaintiff's First Amended Complaint or in the record before the Court that Plaintiff has any offer, much less a completed sale, for all of its real property as required for prepayment of the WCW Loan.  In fact, the record is devoid of evidence of Plaintiff's efforts to sell its real property, of any potential buyers of the real property, of a time-frame for a sale of the real property, or of a refusal by a potential buyer to purchase the real property unless the WCW Loan is prepaid.  In addition, there is not any indication that Defendants would refuse to permit prepayment of the WCW Loan by the Borrower if Plaintiff sold its real property, cleared title in escrow, and met the other requirements of the prepayment paragraph of the WCW Loan. The mere possibility of a future refusal by Defendants to comply with the prepayment provision of the WCW Loan is insufficient to

_____

[3] It is not clear whether the offer Plaintiff received was for a minority interest in Plaintiff itself or for a minority interest in Plaintiff's real property.

establish an actual case or controversy.

### C.   Plaintiff is not the Borrower in the WCW Loan.

As noted, Defendants also assert there is not an actual case or controversy because Plaintiff is not the Borrower under the WCW Loan, and, therefore, Plaintiff does not have any right or authority to prepay the WCW Loan.  Specifically, Defendants point out that the prepayment provision of the WCW Loan specifies "*Borrower* may prepay the Loan Amount in full," and "Borrower" is defined in the first paragraph as "Willow Creek Windpower LLC." Rothermich Decl., Ex. B at 1.  The WCW Loan distinguishes Plaintiff from the borrower throughout the WCW Loan beginning in the opening paragraph:  "The initial members of Borrower . . . were [Plaintiff] and . . . Cullen." *Id.*  In addition,

- Paragraph E of the Recitals states "[t]he Loan is intended by the Parties to be a limited recourse loan secured by the payment of Rent received by the Borrower . . . and by a guaranty from Willow Farms."  Rothermich Decl., Ex. B at 1.

- Paragraph 4(f) states "Lender shall have no recourse against the Borrower other than as provided in the Loan Documents," and "[Plaintiff] shall guaranty repayment to the Lender." *Id.* at 7.

- Paragraph 7(b) contrasts obligations of "the Borrower" under the wind-power lease with those of Plaintiff.

*Id.* at 9.

- Paragraph 12(g) sets out a number of things that "Borrower and [Plaintiff] shall not do without prior consent of the Lender," including amend the "operating agreements for Borrower or [Plaintiff]," fail to pay taxes and fees for "either Borrower or [Plaintiff]," and "change the existing ownership or membership in either Borrower or [Plaintiff]." *Id.* at 13-14.

- Paragraph 12(j) represents "[Plaintiff] owns one hundred percent (100%) of the fee title to the Property . . . [and Borrower] owns one hundred percent (100%) of the wind rights for the Property." *Id.* at 14.

- Paragraph 14 sets out what occurs if "Borrower or [Plaintiff] . . . fail[] to perform or observe . . . any covenant, condition or agreement contained" in the WCW Loan. *Id.* at 17.

- Paragraph 17 reiterates Plaintiff is not a party to the WCW Loan and states "[t]his Agreement shall be binding upon . . . the Parties and [Plaintiff]." *Id.* at 20.

- The signature page reflects WCW is the Borrower and includes the signatures of Plaintiff's representative and the representative of AWCC as members of WCW.

Accordingly, the definition of Borrower in the WCW Loan is not ambiguous:  The Borrower is WCW and not Plaintiff.

Plaintiff alleges in the First Amended Complaint that even though "the 'borrower' was defined as [WCW] in the Promissory Note, all loan proceeds were paid directly to [Plaintiff] making [Plaintiff] the true borrower. [WCW] and Ag Land also treated [Plaintiff] as the borrower." First Am Compl. at ¶ 22. To the extent that Plaintiff asserts the parties' course of dealing modified the definition of borrower in the WCW Loan, Plaintiff's argument is unpersuasive. Paragraph 23 of the WCW Loan provides: "Nothing express or implied in this Agreement is intended to confer any rights or benefits on any Person other than Borrower or Lender and their permitted successors and assigns." Rothermich Decl., Ex B at 21. None of the provisions of the WCW Loan, therefore, were intended to confer any rights or benefits on Plaintiff except as specifically set out in the WCW Loan, and the Loan provisions did not include the right to prepay the Loan. In addition, the WCW Loan provides it "constitute[s] the entire agreement between Borrower and Lender." Rothermich Decl., Ex B at 20. Finally, the WCW Loan does not permit amendment or modification by course of dealing:

> This Agreement may be amended, modified or terminated only by a writing signed by the party against whom it is to be enforced. No act or course of dealing shall be deemed to constitute an amendment, modification or termination hereof. The written consent of Willow Farms shall not be required to bind the Parties to an amendment or modification of this Agreement.

Rothermich Decl. Ex. B at 20. Thus, even if the parties "treated

22 - OPINION AND ORDER

[Plaintiff] as the borrower," the WCW Loan defines Borrower as WCW only and the parties' course of dealing cannot modify the terms of the WCW Loan.

On this record the Court concludes Plaintiff has not established it is the Borrower under the WCW Loan or that it has the authority or right to prepay the WCW Loan as the Borrower.

**D.    Plaintiff does not have unilateral authority to require WCW to prepay the WCW Loan.**

Finally, Defendants also assert Plaintiff does not have any unilateral authority to require WCW to prepay the WCW Loan. Specifically, Defendants contend AWCC's consent is required under the terms of the AROA for WCW to prepay the WCW Loan, AWCC has not consented to prepayment of the WCW Loan because the conditions precedent of prepayment have not been met, and AWCC does not have any obligation to consent to prepayment of the WCW Loan.

Plaintiff, on the other hand, asserts AWCC and Plaintiff have an equal right to manage WCW under the AROA, and, therefore, Plaintiff "has the right to take action on behalf of [WCW] to the extent not specifically delegated to AWCC." Plaintiff also asserts the restrictions set out in § 4.2 of the AROA do not prohibit Plaintiff from prepaying the WCW Loan on behalf of WCW.

**1.    Relevant provisions of the AROA**

Defendants rely on several provisions of the AROA

to support their assertion that Plaintiff does not have

unilateral authority to require WCW to prepay the WCW Loan:

> 3.7  Voting.  On each matter requiring action by
> the Members, each Member shall be entitled to one
> vote.  All decisions of [WCW] shall be approved
> upon the *unanimous vote* of the Members.
>
> * * *
>
> 4.1  General.
>
> (a) Right to Manage.  Each Member shall have
> an equal right to participate in the day-to-day
> management of [WCW].  The Members shall delegate
> primary responsibility for particular business
> matters among themselves from time to time as they
> determine appropriate.  The Member holding
> delegated responsibility as to any matter shall be
> the "Member Agent" of [WCW] for such matters and
> shall solely exercise the authorities given to
> that member for such purposes.
>
> * * *
>
> (b) Member Agent of Company.  The Member
> Agent shall be *the exclusive agent* of [WCW] for
> purposes of its business, and the act of the
> Member Agent, including the execution in [WCW]
> name of any instrument for apparently carrying on
> the business of [WCW] in the usual way, binds
> [WCW], provided all Members are aware and in
> agreement prior to such action by the Member
> Agent, or, unless the Member Agent has in fact no
> authority to act for [WCW] in the particular
> matter, and the person with whom such Member is
> dealing has knowledge of the fact that such member
> has no such authority.  The Member Agent shall,
> among other duties, responsibilities and
> authorities, have the ability to control all bank
> accounts now opened and maintained now or in the
> future by [WCW] for Company business.
>
> * * *
>
> 4.2  Restrictions.  *Without the unanimous consent*
> of all Members, no Member shall, in the capacity

24 – OPINION AND ORDER

as a Member, or Member Agent:

     (a) execute any contract or incur any obligation which may subject [WCW] to a current or long term liability in excess of $5,000.00 annually;

                     * * *

     (d) . . . do any act detrimental to the best interests of [WCW].

                     * * *

4.5 <u>Designated Member Agent</u>.  The designated Member Agent shall be AWCC.

Rothermich Decl., Ex. A at 4-6 (emphasis added).

### 2.   Analysis

       Defendants point out that under § 3.1 of the AROA all decisions of [WCW] are required to be approved by unanimous vote of the Members (Plaintiff and AWCC).  It is undisputed that prepayment of the WCW Loan has not been approved by unanimous vote of Plaintiff and AWCC.  In addition, § 4.2 requires unanimous consent of all Members of WCW to cause WCW "to incur any obligation which may subject [WCW] to a current or long term liability in excess of $5,000.00 annually."  It is also undisputed that the prepayment penalty for the WCW Loan would be approximately $72,000.  The prepayment penalty, therefore, would cause WCW to incur an obligation of more than $5,000 without unanimous consent of the Members in violation of § 4.2(a) of the AROA.  Plaintiff, nevertheless, asserts prepayment would not

25 – OPINION AND ORDER

subject WCW to any obligation because Plaintiff intends to prepay
the WCW Loan (and, presumably, the penalty).  The WCW Loan,
however, specifically provides "*Borrower* . . . shall pay to
Lender . . . a prepayment penalty" when the conditions precedent
to prepayment are met.  Rothermich Decl., Ex A at 5.  As the
Court has previously concluded, WCW is the borrower in the WCW
Loan, and, accordingly, prepayment of the WCW Loan would subject
WCW to a liability in excess of $5,000 even if Plaintiff intended
to cover the liability for WCW.  Thus, the unanimous consent of
Plaintiff and AWCC would be required for WCW to prepay the WCW
Loan.  The Court does not find any provision in the AROA that
permits Plaintiff to act unilaterally to cause WCW to prepay the
WCW Loan or to mandate that WCW prepay the WCW Loan.

Defendants also note § 4.5 of the AROA designates
AWCC as the Member Agent for WCW.  Section 4.1(b) provides the
Member Agent "shall be the *exclusive* agent of [WCW] for the
purposes of its business, and the act[s] of the Member Agent
. . . bind [WCW]" provided certain conditions are met that
undisputedly have been met in this case.  Plaintiff, however,
notes WCW's "business" as set out in the AROA is only "holding
all right, title and interest as Lessor . . . for [the] wind
power facilities" located on Plaintiff's real property.
Rothermich Decl., Ex A at 1.  According to Plaintiff, therefore,
the WCW Loan is not "for the purposes of [WCW's] business" and

26 - OPINION AND ORDER

§ 4.1(b) does not apply.  The record, however, reflects Ag Land
and WCW entered into the WCW Loan to effect the purchase of WCW
by AWCC.  As noted, AWCC and Plaintiff agreed to the WCW Loan,
which gave AWCC the right to receive the annual wind facilities
and wind-rights lease payments made by WCE through 2038 in return
for loaning WCW $2.6 million rather than AWCC purchasing
Plaintiff's interest in WCW outright.  The WCW Loan, therefore,
was entered into "for the purpose of" WCW's business.  Thus,
§ 4.1(b) of the AROA applies; AWCC is the Member Agent of WCW;
and, as a result, AWCC is the exclusive agent of WCW for purposes
of its business, including prepayment of the WCW Loan.

        Finally, Plaintiff asserts AWCC's refusal to consent to
prepayment of the WCW Loan is a violation of its fiduciary duties
under the AROA and/or Oregon law.  Specifically, Plaintiff
asserts all Members of WCW are prohibited under § 4.2(d) of the
AROA from "do[ing] any act detrimental to the best interests of
[WCW]," and, according to Plaintiff, refusing to prepay the WCW
Loan is detrimental to the best interests of WCW because
prepayment would "remov[e] a significant financial liability of
[WCW]."  Plaintiff asserts AWCC is "plac[ing] its interests and
those of its affiliate [Ag Land] ahead of the interests of WCW"
by refusing to permit prepayment of the WCW Loan.  Plaintiff,
however, does not point to any provision in the AROA or Oregon
law that establishes it is a violation of AWCC's fiduciary duty

to refuse to waive the conditions precedent for prepayment,
particularly the conditions that require Plaintiff to "sell[] the
[real] Property and clear[] title in closing escrow to such a
transaction." Rothermich Decl., Ex. B at 5.

If Plaintiff sold, closed on, and cleared title to its
real property and AWCC continued to refuse to agree to prepayment
of the WCW Loan, this matter would present an actual case or
controversy. Because, however, Plaintiff has failed to establish
that it has met the conditions precedent to prepayment and there
is not any provision in the AROA or the WCW Loan that requires
AWCC to agree to prepayment of the WCW Loan without completion of
the conditions precedent, the Court concludes this matter does
not present an actual case or controversy. The Court, therefore,
concludes it lacks jurisdiction.

## II. In the alternative, Plaintiff fails to state a claim.

In the alternative, even if the Court has jurisdiction, for
the reasons set out above the Court concludes Plaintiff fails to
state a claim for declaratory or injunctive relief. In brief,
Plaintiff fails to establish that it has satisfied the conditions
precedent to prepayment of the WCW Loan, Plaintiff has not
established it is the Borrower with any right to prepay the WCW
Loan, and Plaintiff has failed to establish it has any right to
mandate that AWCC agree to permit WCW to prepay the WCW Loan.

Accordingly, the Court grants Defendants' Motion to Dismiss

and dismisses this matter without prejudice.

## **CONCLUSION**

For these reasons, the Court **GRANTS** Defendants' Motion (#14) to Dismiss and **DISMISSES** this matter **without prejudice**.

IT IS SO ORDERED.

DATED this 6th day of May, 2016.

_____
ANNA J. BROWN
United States District Judge

29 - OPINION AND ORDER